## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHELE BARVINCHAK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION NO. 3:2006-69 |
| v. | ) |
| | ) |
| | ) |
| INDIANA REGIONAL MEDICAL | ) JUDGE GIBSON |
| CENTER, | ) |
| Defendant. | ) |
| | ) |

## **MEMORANDUM OPINION and ORDER OF COURT**

**GIBSON, J.**

### I.    **SYNOPSIS**

This matter comes before this Court on Defendant Indiana Regional Medical Center's (hereinafter "Medical Center") Motion To Dismiss and for Summary Judgment (Document No. 11), which moves this Court to dismiss Plaintiff's Amended Complaint (Document No. 6) pursuant to Rule 12(b)6 of the Federal Rules of Civil Procedure and also requests that the Court enter summary judgment in its favor as to all of Plaintiff's claims pursuant to Rule 56 of the Federal Rules of Civil Procedure. The five counts of Plaintiff's Amended Complaint (Document No. 6) allege violations of the Fair Labor Standards Act, 29 U.S.C. §§ 207(a), 215(a), and 211(c), the Pennsylvania Minimum Wage Act, 43 Pa. Stat. § 333.104(c), and the Pennsylvania Wage Payment and Collection Law, 43 Pa. Stat. § 260.3 (Document No. 6).

This Court has subject matter jurisdiction over the federal claims made under the Fair Labor Standards Act, pursuant to 28 U.S.C. §1331; the Court has supplemental jurisdiction over the state law

claims made under the Pennsylvania Minimum Wage Act and the Pennsylvania Wage Payment and Collection Law pursuant to 28 U.S.C. §1367. Venue is proper under 28 U.S.C. §1391(b).

For the reasons stated herein, Defendant's Motion to Dismiss is denied in part and granted in part and Defendant's Motion for Summary Judgment is denied in part and granted in part.

## II. UNDISPUTED FACTUAL HISTORY[1]

At all times relevant to this action, the Medical Center's Employee Policy and Procedure Manual included an Hours of Work Policy.

The purpose of the Hours of Work Policy was to provide...guidelines [to the staff] regarding reporting to work and recording [of] time.

Pursuant to the Hours of Work Policy, at the beginning and end of each work shift, employees were required to swipe their identification badge at their assigned timekeeper terminal.

Pursuant to the Hours of Work Policy, if an employee forgot to swipe her badge, or if the timekeeper terminal did not register the swipe, the employee was directed to contact a director or supervisor immediately "so that the time can be recorded accurately."

Pursuant to the Hours of Work Policy, the "lunch period is thirty (30) minutes and is considered non-paid time."

The Medical Center's Discipline policy specifically identifies "failure to observe established break and mealtimes" as a violation of Medical Center policy.

---

[1]The recited undisputed facts here are direct quotes from the Plaintiff's and Defendant's submissions. (Quotation marks have been omitted to facilitate the ease of reading facts.) Any wording in brackets was included by the Court so that the remainder of the sentence would make sense. If proposed facts or portions thereof are omitted, it is because the Court has concluded that such facts are in dispute and/or are immaterial. The facts which are presented may appear disjunctive as certain other facts that are in dispute among the parties are not presented here.

2

At all times relevant to this action, the Medical Center's Employee Policy and Procedure Manual included a Wage and Salary Administration Program.

The purpose of the Wage and Salary Administration Program was to provide staff guidelines regarding the wage and salary program at the Medical Center.

Pursuant to the Wage and Salary Administration Program: "Non-exempt employees will be compensated for overtime work in compliance with the Fair Labor Standards Act and Pennsylvania Law.... Paid overtime work should be authorized in advance by the employee's Department Director or Supervisor prior to the end of the regular scheduled shift. Unauthorized overtime must be explained.... Permitting non-exempt employees to work overtime without pay, even though the employee was not asked to work overtime and does not expect overtime pay must not be allowed. Questions concerning your pay should be discussed with your immediate supervisor and then, if necessary, referred to the Payroll Department."

Plaintiff was employed by Defendant from June 21, 1999 to November 2005.

Ms. Barvinchak received a copy of the Employee Policy and Procedure Manual when she was hired.

Ms. Barvinchak signed an acknowledgment which indicated that she had received a copy of the Employee Policy and Procedure Manual and agreed to abide by all the policies and procedures.

Early in the year 2001, Plaintiff transferred to Defendant's Medical Records Department.

In or about November 2001, Plaintiff transferred back into Defendant's Registration Department which has been named Patient Access Services Department.

Upon Plaintiff's transfer in November 2001 back into Defendant's Registration Department,

3

Plaintiff came under the supervision of Donna Overman, Director of Patient Access Services.

During the relevant time period, Ms. Barvinchak reported to Donna Overman.

At all times relevant to this action, Ms. Barvinchak worked for the Medical Center as a Patient Access Representative in the Centrex area of the Patient Access Services Department (formerly known as Patient Registration Department.)

Ms. Barvinchak was regularly assigned to the Centrex area of Patient Access as a switchboard or telephone operator.

The workload of Plaintiff and other employees of Centrex increased during all times relevant to the within lawsuit.

[Plaintiff complained about the increased workload.]

At all times relevant to this action, it was well known throughout the Patient Access Department that employees were to report any missed swipes to the Medical Center.

[When Plaintiff notified Defendant regarding missed time-clock swipes], the Medical Center manually corrected Ms. Barvinchak's hours to reflect time actually worked.

At all times relevant to this action, it was well known throughout the Patient Access Department that if an employee was required to work through her unpaid lunch, the employee was to notify the Medical Center so that [the employee] would be paid for the time worked.

At all times during her employment with the Medical Center, Ms. Barvinchak was classified as a non-exempt employee entitled to overtime compensation in accordance with the Medical Center's Wage and Salary Administration Program.

During her employment with the Medical Center, Ms. Barvinchak reported and was paid for

4

more than 400 hours of overtime.

Ms. Overman called Plaintiff at home and on other occasions about work related matters.

Plaintiff was never instructed by Ms. Overman or any of Defendant's management personnel to record the time she spent working at home.

Plaintiff was never paid for any of the time she spent working at home.

Ms. Barvinchak's hourly rate was $8.82 at the beginning of her employment in 1999; $10.70 in March 2003; and $12.46 at the time of her termination in 2005.

At all times relevant to this action, the dress code for Patient Access Representatives required them to wear scrubs, which they were required to purchase.

Defendant has a policy that employees are to wear specific uniforms required by Defendant.

At all relevant times, the Department Dress Code state[d] that "The financial responsibility [for scrubs] will be the employees. The Hospital will not be responsible for any cost that could occur."

The Medical Center never agreed to pay Ms. Barvinchak for the costs she incurred in purchasing scrubs.

## III.   MOTION TO DISMISS

### A.   **Standard of Review**

In analyzing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6):

> the district court [is] required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the non-movant. *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989); *D.P. Enters., Inc. v. Bucks County Community College*, 725 F.2d 943, 944 (3d Cir. 1984). In determining whether a claim should be dismissed under Rule 12(b)(6), a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record.

*Jordan v. Fox, Rothschild, O'Brien, & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. __, 127 S.Ct. 1955, 1969, 167 L.Ed.2d 929, 945 (2007) (citations omitted). A complaint that states "a plausible entitlement to relief" is the complaint that survives a Rule 12(b)(6) motion as well as satisfies the Rule 8 pleading requirements. *Id.* at __, 1275 S.Ct. at 1964-65, 1967, 167 L.Ed.2d at 940, 942. In considering a motion to dismiss, the Court is not deciding the issue of whether a "plaintiff will ultimately prevail" but is deciding if the plaintiff "is entitled to offer evidence to support [his] claims". *Lake v. Arnold*, 112 F.3d 682, 688 (3d Cir. 1997) (citation omitted); *Nami v. Fauver*, 82 F.3d 63 (3d Cir. 1996).

## B. Analysis

### 1. Plaintiff's FLSA and PMWA Claims.

In Count I of her Amended Complaint, Plaintiff alleges three violations of the FLSA: (1) Defendant's failure to pay Plaintiff straight time compensation for hours which were not recorded or permitted by Defendant for weeks in which her total hours exceeded 40; (2) Defendant's failure to pay Plaintiff overtime compensation for hours which were not recorded or permitted by Defendant; and (3) Defendant's policy requiring Plaintiff to purchase uniforms at her own expense in an amount sufficient to reduce her gross pay below the applicable minimum wage and reduce her pay below the amount required to be paid for straight time and overtime compensation for hours worked in excess of 40 in a work week (Document No. 6 at ¶¶ 19, 22, 26, and 27). In Count III, Plaintiff alleges that Defendant violated the PMWA by failing to pay Plaintiff any straight time or overtime compensation for unrecorded hours.

6

Defendant has moved to dismiss these claims based upon the following arguments: (1) the FLSA and PMWA do not require the payment of straight time compensation, (2) Plaintiff does not allege that Defendant suffered or permitted her to work any uncompensated overtime hours or that she was "employed" during the alleged uncompensated overtime hours she claims to have "worked," and (3) Plaintiff does not allege that she was ever required to expend personal funds to purchase uniforms in an amount sufficient to reduce her pay below the applicable minimum wage or overtime requirements. This Court will address each of Defendant's arguments in turn.

### a.    Plaintiff's straight time compensation claim.

Plaintiff claims that Defendant violated Section 207(a) of the FLSA when it failed to pay her straight time compensation for the weeks she worked in excess of forty (40) hours. Section 207(a)(1) addresses overtime compensation and states in pertinent part:

> "[N]o employer shall employ any of his employees .... for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

29 U.S.C. § 207(a)(1). The official interpretation of Section 207(a) promulgated by the Department of Labor, 29 C.F.R. § 778.315, specifically discusses the compensation of straight time hours when an employee works overtime during a pay cycle. 29 C.F.R. § 778.315, entitled, "Payment for all hours worked in overtime workweek is required," provides:

> In determining the number of hours for which overtime compensation is due, all hours worked (see § 778.223) by an employee for an employer in a particular workweek must be counted. Overtime compensation, at a rate not less than one and one-half times the regular rate of pay, must be paid for each hour worked in the workweek in excess of the

7

> applicable maximum hours standard. **This extra compensation for the excess hours of overtime work under the Act cannot be said to have been paid to an employee unless all the straight time compensation due him for the nonovertime hours under his contract (express or implied) or under any applicable statute has been paid.**[2]

Defendant contends that these provisions do not require straight time compensation for non-overtime hours worked. Rather, Defendant argues that the FLSA merely requires that employees receive not less than minimum wage for all non-overtime hours. As Plaintiff is not alleging that she received less than minimum wage for her non-overtime hours, Defendant argues that Plaintiff has failed to state a claim under the FLSA (Document Nos. 12, at 3-4; 29 at 2). This Court disagrees.

First, the title of 29 C.F.R. § 778.315, "Payment for all hours worked in overtime workweek is required," as well as the language contained therein belies Defendant's argument. *See* 29 C.F.R. § 778.315. The language of § 778.315, that overtime pay has not been paid unless "all the straight time compensation due"... "for the nonovertime hours" ..."has been paid," clearly provides that an employer must pay all owed straight time compensation in order to comply with the FLSA's overtime requirement and this Court accords this interpretation by the Department of Labor some deference. *See Cleary v. Waldman,* 167 F.3d 801, 808 (3d Cir. 1999) (agencies promulgating reasonable interpretations, while exercising their delegated rulemaking authority, will be granted deference to those reasonable interpretations), *citing Skidmore v. Swift,* 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124, 129 (1944) (the Code of Federal Regulations issued by the Department of Labor and adopted pursuant to the FLSA, constitutes "a body of experience and informed judgment to which courts and litigants may

---

[2]Both parties have cited 29 C.F.R. § 778.315 in support of their respective positions regarding Plaintiff's claim for straight time compensation under 29 U.S.C. § 207(a)(1).

properly resort for guidance").

Second, the viability of a claim under Section 207 of the FLSA for straight time compensation for weeks in which the employee has worked overtime is implicit in the caselaw of multiple circuits, including the Third Circuit. For instance, although the *Platek v. Duquesne Club*, 961 F. Supp. 835 (W.D. Pa. 1995) decision of this District did not directly address the issue of whether a plaintiff can bring a claim for straight time compensation under the FLSA, Judge Bloch did explain the straight time compensation component to the FLSA's overtime provision: "In other words, proper overtime compensation cannot be deemed paid unless and until the employee has been compensated at the regular rate of pay for the first forty hours worked." *Platek*, 961 at 840. The ability of a claimant to seek straight time pay owed to her when she has worked overtime is implicit in his opinion. In the not-so-recent Eastern District case of *Hayes v. Bill Haley & His Comets, Inc.*, 274 F. Supp. 34 (E.D. Pa. 1967), the viability of the straight time compensation claim is, again, implied. In *Hayes*, the plaintiff sought unpaid minimum wages and overtime compensation. The court, however, awarded the plaintiff for nonovertime hours worked but not paid for at his regular rate, as opposed to minimum wage, "[f]irst, the policy of the Administrator is to enforce the regular rate where there is overtime involved since the overtime rate can hardly be said to be paid until the nonovertime rate has been paid." *Hayes*, 274 F. Supp. at 37, *citing* 29 C.F.R. § 778.315.

The viability of a claim for straight time compensation under the FLSA, where the employee-plaintiff has worked overtime under § 207, is also implicit in the Fourth Circuit's decision in *Monahan v. County of Chesterfield, VA*, 95 F.3d 1263, 1284 (4th Cir. 1996). *Monohan* was a straight time compensation case wherein the plaintiffs, county police officers, sought compensation for the hours they

9

worked "in the gap" between their normally scheduled 135 hours and the overtime threshold of 147 hours. (The court referred to the hours at issue as "gap time.") Plaintiffs, all of whom worked pursuant to an employment agreement, sought straight time compensation for weeks in which they worked only gap time ("pure gap time") and also for weeks in which they worked gap time and overtime ("overtime gap time"). Significantly, the plaintiffs conceded that they were not owed any overtime pay and did not allege that they were paid less than minimum wage for any week. The district court entered summary judgment in the plaintiffs' favor, holding that the defendant was liable under the FLSA for both the overtime gap time claims and the pure gap time claims. The Fourth Circuit, however, strongly reversed the decision of the district court, entered summary judgment in favor the defendant and in doing so attempted to "place some common sense limitations on claims for straight time brought pursuant to the FLSA." *Monahan*, 95 F.3d at 1266. To that end, before beginning its analysis of plaintiffs' claims, the court pointed out that the FLSA has been termed the "minimum wage/maximum hour law" and that "the two central themes of the FLSA are its minimum wage and overtime requirements." *Id.* at 1266-67 (citations omitted).

Despite its emphasis on the limited purpose of the FLSA, the court did not simply find that all of plaintiffs' claims failed under the FLSA because there was no alleged failure to pay overtime or failure to pay minimum wage. Instead, the court analyzed the pure gap time and overtime gap time claims separately. *Monahan*, 95 F.3d at 1284.

As to the pure gap time claims, with the aforementioned central themes of the FLSA in mind, the court disagreed with the district court's determination that the FLSA is the proper vehicle to pursue straight time compensation in pay cycles in which an employee has worked no overtime and been paid

10

at least minimum wage for all hours worked. *Monahan*, 95 F.3d at 1280. The court quite simply held, "[a]bsent a minimum wage/maximum hour violation, we find no remedy under the FLSA for pure gap time claims." *Id.* at 1284.

When analyzing the overtime gap time claims, however, the court examined whether the employment agreement between the county and the officers properly compensated plaintiffs for all straight time hours. *Monahan*, 95 F.3d at 1273. Ultimately, the court determined that evidence relating to the terms of the employment agreement established that the annual salary paid to plaintiffs applied to all hours worked up to the FLSA overtime threshold and that, consequently, the employment agreement compensated the plaintiffs for all nonovertime hours up to the overtime threshold. *Id.* at 1273. For our purposes here, more relevant than the holding, is the fact that the court examined whether the plaintiffs' straight time hours were paid despite the fact that no overtime pay was owed. The court did not rule, as it did with the plaintiffs' pure gap time claims, that the FLSA is not the proper vehicle to pursue straight time compensation. Rather, because the court went through the exercise of examining whether all straight time hours were paid during overtime weeks, that a plaintiff can recover owed straight time compensation under the FLSA for weeks in which she works overtime is implicit. *See also Donovan v. Crisostomo*, 689 F.2d 869, 876 (9th Cir. 1982) (holding that the plaintiff-Secretary of Labor could seek restitution for kickbacks from straight time wages as overtime compensation for those weeks in which overtime was worked); *Lamon v. City of Shawnee*, 754 F. Supp. 1518 (D. Kan. 1991), *aff'd in relevant part*, 972 F.2d 1145, 1155 (10 Cir. 1992) (holding that plaintiffs could recover for "gap time" hours below the overtime threshold as the requirement that plaintiffs be paid compensation at their regular hourly rate is implicit in the framework of the FLSA).

11

This Court finds most instructive the case of *Reich v. Midwest Body Corp.*, 843 F. Supp. 1249 (N.D. Ill. 1994), a case relied upon by both Plaintiff Barvinchak and Judge Bloch in *Platek*, as the facts there are most similar to the present case. The *Midwest Body Corp.* plaintiffs-employees sought both straight time and overtime pay, as Plaintiff does here. The court held that the defendant had to pay the employees' straight time compensation and overtime based upon their contract rates, not based upon minimum wage rates, in order to satisfy the FLSA. *Midwest Body Corp.*, 843 F. Supp. at 1252. While the court did not explicitly discuss the viability of the plaintiffs' claim for straight time compensation, the award of straight time compensation demonstrates the *Midwest Body Corp.* court's position that such a claim is indeed proper under the FLSA.

This Court is not persuaded by the legal authority relied upon by Defendant in support of its argument that the FLSA and 29 C.F.R. § 778.315 do not establish a cause of action for straight time compensation where the employee has worked overtime. Defendant relies, in part, on the following comment made by the Third Circuit in *Davis v. Mountaire Farms, Inc.*, 453 F.3d 554, 556 (3d Cir. 2006), "the FLSA provides generally that covered, nonexempt employees must receive not less than a stated minimum wage for all hours worked, and overtime premium pay for all hours worked over forty hours in a workweek." *Mountaire Farms, Inc.*, however, was an FLSA case involving issues of whether certain employees fell within the executive exemption to the overtime requirements and did not discuss, or even mention, nonovertime or straight time compensation or 29 C.F.R. § 778.315. As such, the Third Circuit's general comment regarding the FLSA in *Mountaire Farms, Inc.* is mere *dicta* and not binding on this Court. *See Mariana v. Fisher*, 338 F.3d 189, 201 (3d Cir. 2003) ("[i]t is also well established that a subsequent panel is not bound by dictum in an earlier opinion"), *citing Burstein v. Ret.*

*Account Plan for Employees of Allegheny Health Educ. and Research Found.*, 334 F.3d 365, 375-76 (3d Cir. 2003); *see also Gov't of Virgin Islands v. Fonseca*, 274 F.3d 760 (3d Cir. 2001) (discussion not part of the holding is dicta, and not precedential).

Defendant also relies upon *Bolick v. Brevard County Sheriff's Dep't.*, 937 F. Supp. 1560 (M.D. Fla. 1996), in support of its argument that the FLSA and 29 C.F.R. § 778.315 do not establish a cause of action for straight time compensation. The *Bolick* plaintiffs' straight time compensation claims were, however, critically different than Plaintiff Barvinchak's claim. Unlike here, the *Bolick* plaintiffs sought straight time compensation for hours worked in weeks when they did not work overtime and made no claim for overtime pay. *Bolick*, 937 F. Supp. at 1567-68. In fact, the district court in *Bolick* highlighted the plaintiffs-employees' lack of overtime in rendering its decision, "none are entitled to their regular straight time wage rates in the weeks in which no overtime was performed." *Id.* at 1569. As such, the *Bolick* decision does not support Defendant's argument that Plaintiff Barvinchak is not entitled to straight time compensation for the weeks in which she did work overtime and its reliance upon that decision is misplaced. Additionally, this court notes that the *Bolick* court dismissed the plaintiffs' straight time compensation claim at summary judgment, not on a Rule 12(b)(6) motion as we have here.

Finally, Defendant cites *McElmurry v. US Bank Nat'l Ass'n*, No. 04-642, 2005 WL 2078334 (D. Or. Aug. 24, 2005) for the proposition that Plaintiff cannot bring a viable FLSA claim for nonovertime compensation when she does not allege that her wages were less than minimum wage (Document No. 12 at p. 4). *McElmurry* is an FLSA minimum wage case, not an overtime or straight time compensation case. The court does not discuss the viability of a claim for straight time compensation pursuant to Section 207 of the FLSA. While the *McElmurry* court briefly references

13

Section 207, it does so to further its conclusion that a state's higher minimum wage provision is not incorporated into the FLSA's minimum wage provision, an issue which has no bearing on Plaintiff Barvinchak's claim.

Based upon the foregoing caselaw, this Court holds that because Plaintiff worked overtime during the weeks for which she seeks straight time compensation, her claim for straight time compensation which she alleges is owing is viable under the FLSA.

### b.    Plaintiff's overtime compensation claim.

In addition to seeking compensation for unpaid straight time hours, Plaintiff seeks unpaid overtime compensation. As Plaintiff admits that she was paid overtime compensation for hours which were worked and recorded with the permission of management, Plaintiff's overtime claim is limited to overtime hours which were not recorded (Document No. 6 at ¶¶ 19, 22, 23). Defendant contends that Plaintiff's overtime claim fails because she has failed to plead that she was "employed" during the alleged uncompensated overtime hours or that Defendant knew or should have known that she was working unrecorded overtime (Document 12 at 5).

This Court is not persuaded by Defendant's argument that Plaintiff has failed to adequately state a claim for overtime compensation under the FLSA. Notably, Defendant baldy attacks the sufficiency of Plaintiff's complaint as follows: "it is simply not enough to claim that hours were 'worked' without also asserting that the employer had actual or constructive knowledge of that work," without citing to legal authority (Document No. 29 at 3). The two cases Defendant does rely upon for its knowledge theory, *Davis v. Food Lion*, 792 F.2d 1274, 1276 (4th Cir. 1986) and *Forrester v. Roth's IGA Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981), do not address the sufficiency of Plaintiff's allegations. *Food*

14

*Lion* was an appeal of a bench trial wherein the district court entered judgment for the defendant-employer based upon the court's factual finding that the defendant had no actual or constructive knowledge of the plaintiff's overtime work. *See Food Lion*, 792 F.2d at 1277. In *Forrester*, the district court entered summary judgment in favor of the defendant-employer and against the plaintiff-employee as it was undisputed that the plaintiff deliberately prevented his employer from learning of his overtime hours. *Forrester*, 646 F.2d at 414-15. Here, however, the issue is whether Plaintiff's failure to specifically plead Defendant's knowledge of her overtime hours is fatal to her claim.

The Federal Rules of Civil Procedure require notice pleading, not fact pleading, so to withstand a Rule 12(b)(6) motion, the plaintiff "need only make out a claim upon which relief can be granted. If more facts are necessary to resolve or clarify the disputed issues, the parties may avail themselves of the civil discovery mechanisms under the Federal Rules." *Alston v. Parker*, 363 F.3d 229, 233 n.6 (3d Cir. 2004), *quoting Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 512 (2002) ("This simplified notice pleading standard relies on liberal discovery rules ... to define facts and issues and to dispose of unmeritorious claims."). Viewed in light of the foregoing liberal pleading standards, this Court simply cannot say, at this early stage of the proceedings, that Plaintiff will be unable to state a set of facts consistent with her claim for overtime compensation that would defeat Defendant's defenses that Plaintiff was not "employed" during the alleged overtime hours or that Defendant did not know or have reason to know of the overtime hours Plaintiff worked. Moreover, Plaintiff's factual allegations regarding Defendant's failure to keep accurate records of Plaintiff's overtime hours permit an inference, perhaps tenuous, that Defendant knew or had reason to know of Plaintiff's overtime work. *See Menkowitz v. Pottstown Memorial Medical Center*, 154 F.3d 113, 124 (1998). Defendant's motion to

15

dismiss Plaintiff's overtime claims is, therefore, denied.

### c.   Plaintiff's purchase of uniforms.

Plaintiff claims Defendant violated the FLSA in any work week in which the Plaintiff expended personal funds to purchase uniforms in an amount sufficient to reduce her gross pay to (1) below minimum wage (in weeks she worked up to 40 hours), and (2) below the amount required to be paid for straight time and overtime compensation (in weeks she worked in excess of 40 hours) (Document No. 6 at ¶¶ 26-27). Defendant argues that these uniform policy claims are defective because Plaintiff raises only hypothetical allegations and fails to allege that the required uniform expense was in fact ever in an amount sufficient to reduce her pay below minimum wage and overtime requirements.

As discussed above, the Federal Rules of Civil Procedure require notice pleading, not fact pleading. Viewed in light of the aforementioned liberal pleading standards, Plaintiff's allegations regarding Defendant's uniform policy are sufficient to survive Defendant's 12(b)(6) motion to dismiss.

### 2. FLSA Record Keeping Violations

Count II of Plaintiff's Amended Complaint (Document No. 6) alleges that Defendant violated the FLSA's record keeping provisions, specifically, sections 211(c) and 215(a)(5). *See* 29 U.S.C. §§ 211(c) and 215 (a)(5). Defendant contends that this claim should be dismissed because the FLSA does not provide a private right of action to enforce the record keeping provisions of the Act (Document Nos. 12 at 7). Conceding that she cannot bring such a claim under the FLSA, Plaintiff has requested that she be permitted to amend her complaint to include the record keeping charges in Counts I and III (Document No. 22 at 6). Such re-pleading is not necessary.

Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, "[s]tatements in a pleading may

16

be adopted by reference in a different part of the same pleading or in another pleading or in any motion." FED.R.CIV.P. 10(c). In her Amended Complaint, Plaintiff has taken advantage of Rule 10(c) by including at the start of each count of her Complaint the following language, "[t]he allegations set forth in each and every preceding paragraph are incorporated herein by reference." As such, the allegations set forth in Count II are just as much a part of Counts I and III as if they had been mechanically rewritten into those counts. Plaintiff, therefore, need not amend her Complaint to re-state her allegations regarding Defendant's record keeping in Counts I and III as they are already included therein. As such, Defendant's Motion to Dismiss Count II is granted and Plaintiff's request that she be permitted to amend her Complaint to include the record keeping charges in a paragraph in Counts I and III is denied as moot.

### 3. Plaintiff's WPCL Claims

In Count IV of the Complaint, Plaintiff alleges that Defendant committed the following violations of the WPCL: (1) failing to compensate Plaintiff, and other similarly situated employees, "for hours worked but not recorded" as required under 43 P.S. § 260.3; and (2) requiring Plaintiff, and other similarly situated employees, to expend personal funds for business expenses without reimbursing Plaintiff or the other similarly situated employees in violation of 43 P.S. § 260.3 (Document No. 6 at ¶¶ 40, 41). Defendant seeks dismissal of both claims arguing that neither claim as alleged is recoverable under the WPCL (Document No. 12 at 9, 10).

#### a. WPCL Claim for compensation for hours not recorded.

The WPCL does not create any substantive right to wages or other forms of compensation;

17

rather, it merely provides a statutory vehicle for employees to recover earned wages from an employer who has breached an underlying contractual obligation to provide such wages. *See Weldon v. Kraft, Inc.*, 896 F.2d 793, 801 (3d Cir. 1990); *see also De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 309 (3d Cir. 2003) ("WPCL does not create a right to compensation .... rather, it provides a statutory remedy when the employer breaches a contractual obligation to pay earned wages. The contract between the parties governs in determining whether specific wages are earned") (internal quotations and citations omitted). Accordingly, the WPCL is available only for contract-based claims. *See McGough v. Braodwing Communications, Inc.*, 177 F. Supp. 2d 289 (D.N.J. 2001) (granting defendant-employer's Rule 12(b)(6) motion as to WPCL claims for bonuses where no binding contractual entitlement for such bonuses existed and denying the motion as to WPCL claims for commission wages as plaintiffs sufficiently alleged the existence of an implied contract); *Mavrinac v. Emergency Medicine Ass'n of Pittsburgh*, No. 04-1880, 2005 WL 2304495, at *8 (W.D. Pa. Sept. 21, 2005) (holding that for plaintiff to recover under the WPCL, one or more of the defendants must breach a contract); *Panetta v. SAP America, Inc.*, 05-4511, 2007 WL 1001889, at *7 (E.D. Pa. March 30,2007) *citing Banks Engineering Co. v. Polons*, 697 A.2d 1020, 1024 (Pa. Super. Ct.1997) (stating that the WPCL "only establishes an employee's rights to enforce payment of ... compensation to which an employee is otherwise entitled by the terms of an agreement").

Here, Defendant argues that Plaintiff's WPCL claim fails as a matter of law because she does not allege that her claim for unpaid, unreported hours is based upon any contract or agreement with Defendant (Document No. 12 at 9). Plaintiff responds that Defendant's notice of the time and place of payment and establishment of her rate of pay creates the contract required by the WPCL and that "there

18

is an implied contract to pay Plaintiff and similarly situated employees for all hours worked on behalf of Defendant and the WPCL requires such payment" (Document No. 39 at 9). With regard to Plaintiff's argument that Defendant's notice of the time and place of payment and establishment of her rate of pay created a contract as to both her reported and unreported hours, Plaintiff's own allegations that Defendant only paid her for hours which were recorded undermine this theory (Document No. 6 at ¶ 23). Similarly, the allegations in Plaintiff's Amended Complaint do not support her argument that an implied contract existed regarding unreported hours. Again, Plaintiff specifically alleges that Defendant only paid her for hours which were recorded (Document No. 6 at ¶ 23). As Plaintiff makes no allegation that Defendant ever compensated her for unreported hours, the employment relationship between the parties would not create a reasonable expectation by P laintiff that she would be compensated for any unreported hours. *Compare McGough,* 177 F. Supp. 2d at 297 (finding that in light of the employment relationship between the parties and the defendant's remittance of compensation in the form of wages and commissions over the course of the plaintiffs' employment, it was clearly reasonable for plaintiffs to expect that the defendant would similarly compensate them for work performed prior to the date they were discharged.). Further, because Plaintiff has specifically alleged that Defendant only paid her for hours which were recorded, an intention on the part of Defendant to pay Plaintiff for unreported hours cannot be inferred from Plaintiff's allegations. *Compare Ingrassia Construction Co. v. Walsh*, 337 Pa. Super. 58, 67, n.7, 486 A.2d 478, 483 (1984) (noting that the intent of the parties to an implied contract is inferred from their acts in light of surrounding circumstances) (citations omitted). As such, Plaintiff's own allegations contradict her theory that an implied contract existed between the parties regarding Plaintiff's unreported hours.

19

Based upon the aforementioned caselaw, Plaintiff's Amended Complaint fails to sufficiently allege that any contract, express or implied, existed between the parties as necessary to assert a claim for wages under the WPCL. Defendant's motion to dismiss as to Plaintiff's WPCL claim for unreported hours is, therefore, granted.

### b.    Reimbursement of business expenses.

Defendant contends that Plaintiff's WPCL claim for unreimbursed business expenses also fails because Plaintiff has failed to allege that any contract existed wherein Defendant agreed to reimburse her for such expenses (Document No. 12 at 10). This Court agrees. Plaintiff's own allegations contradict any argument that Defendant agreed to reimburse her for the uniforms she purchased, "Plaintiff and other similarly situated employees were required to purchase uniforms at their own expense pursuant to Defendant's policy requiring such purchases" (Document 6 at ¶ 25). Because Plaintiff has failed to allege, and cannot allege based upon paragraph 25 in her Amended Complaint, that Defendant agreed to reimburse her for the aforementioned business expenses, her claim under the WPCL fails as a matter of law. *See Weldon* and *Mavrinac, supra.* Defendant's motion to dismiss as to Plaintiff's WPCL claim for unreimbursed business expenses is, therefore, granted.

## IV.    MOTION FOR SUMMARY JUDGMENT

### A.    Standard of Review

Summary judgment is appropriate only when it is demonstrated that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-32, 106 S.Ct. 2548, 2552- 57, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c). An issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In deciding a motion for summary judgment, all reasonable inferences must be drawn in favor of the non-movant. *Oritani*

*[Sav. and Loan Ass'n v. Fidelity and Deposit Co.*, 989 F.2d 635, 638].

*Troy Chemical Corp. v. Teamsters Union Local No. 408*, 37 F.3d 123, 125-126 (3d Cir. 1994).

> As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted. See generally 10A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2725, pp. 93-95 (1983). This materiality inquiry is independent of and separate from the question of the incorporation of the evidentiary standard into the summary judgment determination. That is, while the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs. Any proof or evidentiary requirements imposed by the substantive law are not germane to this inquiry, since materiality is only a criterion for categorizing factual disputes in their relation to the legal elements of the claim and not a criterion for evaluating the evidentiary underpinnings of those disputes.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211 (1986).

> Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. *Adickes*, 398 U.S., at 158-159, 90 S.Ct., at 1608-1609. Neither do we suggest that the trial courts should act other than with caution in granting summary judgment or that the trial court may not deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial. *Kennedy v. Silas Mason Co.*, 334 U.S. 249, 68 S.Ct. 1031, 92 L.Ed. 1347 (1948).

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513 - 2514, 91 L.Ed.2d 202, 216

(1986).

## B.    Analysis[3]

In addition to seeking the dismissal of Counts I, III and IV for pleading deficiencies pursuant

---

[3]Any general reference in the following analysis to Exhibits B, C, D, and E from the Plaintiff's Appendix (Document No. 23) excludes any pages previously stricken by the Order of Court dated September 28, 2007 (Document No. 45).

to Federal Rule of Civil Procedure 12(b)(6), Defendant moves for summary judgment as to these Counts.[4] Defendant contends that (1) Plaintiff's FLSA and PMWA claims for uncompensated overtime pay (Counts I and III) fail as a matter of law because there is no evidence that Defendant had actual or constructive knowledge of Plaintiff's unreported overtime; and (2) Plaintiff's FLSA claim based upon Defendant's policy requiring her to purchase uniforms (Count I) fails because Defendant did not require her to expend personal funds in amounts sufficient to reduce her pay below legal mandates (Document No. 12 at12, 15).[5]

## 1. Plaintiff's FLSA and PMWA Claims for Unreported Overtime.

In support of her claim for overtime compensation, Plaintiff asserts that she (1) frequently worked through her unpaid lunch breaks without being compensated, (2) worked extra time in addition to her regular shift without receiving overtime pay, and (3) received work related phone calls at home for which she was not paid overtime (Document 23-7, Ex. F). Plaintiff admits that these hours, for which she now seeks overtime compensation, were not recorded (Document No. 22 at 14).

In order to recover for uncompensated overtime work under the FLSA, the plaintiff must prove that the defendant had knowledge, either actual or constructive, of the plaintiff's overtime work. *Food Lion*, 792 F.2d at 1276 (citations omitted); *Reich v. Dept. of Conservation & Natural Res.*, 28 F.3d 1076, 1082 (11th Cir. 1994) (holding that plaintiffs must prove that defendants had knowledge, or should

---

[4]In light of the ruling set forth above that Defendant's motion pursuant to Federal Rule of Civil Procedure 12(b)(6) is granted as to Plaintiff's WPCL claims, Count IV, the Court need not address Defendant's motion for summary judgment as to those claims.

[5]Although Defendant has moved to dismiss Plaintiff's claim for straight time compensation pursuant to Fed. R. Civ. P. 12(b)6, Defendant has not moved for summary judgment as to this claim.

have had knowledge, of their overtime work). "In reviewing the extent of an employer's awareness, a court need only inquire whether the circumstances were such that the employer either had knowledge of overtime hours worked or else had the opportunity through reasonable diligence to acquire knowledge." *Dept. of Conservation & Natural Res.,* 28 F.3d at 1082.

Accordingly, the issue here is whether Defendant had actual or constructive knowledge of Plaintiff's missed lunches, extra work beyond her shift and receipt of work calls at home. Defendant insists that it did not have actual or constructive knowledge of these unreported hours based upon the following four "undisputed" facts: (1) Defendant's policy required accurate reporting of all hours worked; (2) Plaintiff reported and was compensated for a substantial number of overtime hours; (3) Plaintiff reported hours worked but not captured by the timekeeper system; and (4) Defendant did not have actual or constructive knowledge about any unreported hours worked by Plaintiff (Document No. 12 at 12).

Regarding Defendant's first argument, while the evidence shows that Defendant had policies with regard to the reporting of hours, overtime, and lunch breaks, this fact does not shield Defendant from liability under the FLSA. *See Dept. of Conservation & Natural Res.*, 28 F.3d at 1082 (holding that the fact that the defendant had a policy that all overtime must be approved did not shield the defendant from liability under the FLSA). Indeed, the regulations specifically caution that policies, such as Defendant's, are not enough:

> [I]t is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so.

23

29 C.F.R. § 785.13. Accordingly, the fact that Defendant instituted reporting of hours, overtime, and lunch break policies is not conclusive evidence that Defendant did not have actual or constructive knowledge of Plaintiff's alleged overtime work. *See Dept. of Conservation & Natural Res.*

Defendant's second undisputed fact, that Plaintiff reported and was compensated for a substantial number of overtime hours, is conceded by Plaintiff in her Amended Complaint (Document No. 6 at ¶ 23). While this fact does indicate that Plaintiff was aware of how to report her overtime hours, it is not dispositive of the issue here: whether Defendant had actual or constructive knowledge of Plaintiff's alleged *unreported* overtime. Similarly, Defendant's evidence that Plaintiff notified the Medical Center of missed time-clock swipes and that Defendant responded by manually correcting Plaintiff's missed time-clock swipes to accurately reflect the time she actually worked, while indicating that Plaintiff knew how to capture her work time, does not establish that Defendant had no actual or constructive knowledge of her alleged unreported overtime hours. Defendant's first three factual assertions, therefore, do not logically "lead to the ultimate indisputable conclusion" that Defendant did not have any actual or constructive knowledge of Plaintiff working unreported hours as Defendant contends.

Plaintiff insists that Defendant had actual and/or constructive knowledge of her missed lunches, extra work and phone calls at home.

### a.    Plaintiff's missed lunch breaks.

According to Plaintiff, she complained about missed lunches on numerous occasions to Florence Arduini and Nancy Hannock, but was not instructed to report the missed lunches (Document No. 23-7,

24

Ex. F at 2).[6] Additionally, Plaintiff claims that her Supervisor, Donna Overman should have been aware of Plaintiff's missed lunches due to the heavy workload, the high volume of calls that were received and Ms. Overman's rule that one person could not be alone in the Centrex Department during daylight hours (Document No. 23-7, Ex. F at 2). Indeed, the workload, busy nature of Plaintiff's department, and the difficulty of providing phone coverage during lunch breaks were discussed in emails between Plaintiff and Donna Overman (Document Nos. 23-3, Ex. B; 23-4, Ex. C). These emails show that, at times, Plaintiff and the other employees in Centrex were instructed to cover their own lunches or were forced to do so due to the busy work load (Document Nos. 23-3, Ex. B at 25; 23-4, Ex. C at 1). Additionally, the emails show that Plaintiff advised Ms. Overman on multiple occasions that she could not complete her work during the normal work day (Document Nos. 23-4, Ex. C at 1; 23-5, Ex. D at 4, 7, 14, 15). As such, this Court finds that Plaintiff has presented sufficient evidence from which a reasonable jury could find that Defendant could have acquired actual knowledge of Plaintiff's alleged missed lunch breaks through the exercise of reasonable diligence. *See Dept. of Conservation & Natural Res.,* 28 F.3d at 1084; *see also Forrester,* 646 F.2d at 414 ("[t]his is not to say that an employer may escape responsibility by negligently maintaining records required by the FLSA, or by deliberately turning its back on a situation"). Defendant's motion for summary judgment as to Plaintiff's overtime claim based upon missed lunch breaks is, therefore, denied.

### b. Plaintiff's work at home.

Allegedly due to a significant increase in the volume of work, Plaintiff claims she worked extra

---

[6]In her Declaration submitted by Defendant, however, Ms. Arduini disputes this allegation, "Michele Barvinchak never told me that she had to work through lunch or that she had worked hours for which she was not paid" (Document No. 14-4, Ex. 8 at ¶ 16). However, for purposes of summary judgment, Plaintiff's evidence is to be believed. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 255, *citing Adickes,* 398 U.S. at 158-159.

time at home for which she was not paid (Document No. 23-7, Ex. F at 2). Plaintiff does not assert that she informed anyone that she had to work from home but, rather, that on numerous occasions "she reported the effect of the increase in the volume of work in the Department and its effect on the ability of employees, including me, to get our work done during the normal work day" (Document No. 23-7, Ex. F at 2). Indeed, on at least five (5) occasions between May 2003 and the end of December 2003, Plaintiff emailed Donna Overman regarding her inability to complete her reports within the work day (Document Nos. 23-4, Ex C at 1; 23-5, Ex. D at 4, 7, 14, 15). Those emails also show that Plaintiff asked Ms. Overman to shift report responsibility to the night shift employees who had a lesser volume of calls (Document No. 25-5 at 7, 14). Based upon this evidence, Plaintiff claims Defendant knew or should have known that she was working extra time beyond her regular shift to get her work done (Document No. 22 at 12).

Plaintiff has proffered no evidence that Defendant had actual knowledge of the time she spent doing work at home beyond her shifts. Nor do Plaintiff's emails to Ms. Overman regarding her inability to complete her work during the normal work day suggest that Defendant would have had constructive knowledge that Plaintiff performed work at home during unrecorded overtime hours (Document Nos. 23-4, Ex. C at 1; 23-5, Ex. D at 4, 7, 14, 15). For instance, Plaintiff reported in an email to Donna Overman on June 24, 2004 that if another Centrex employee had not finished a certain task for her during the night shift, "it would not have gotten done yesterday" (Document No. 23-5, Ex. D at 7). In her May 12, 2003 email to Ms. Overman regarding her workload, Plaintiff warns, "I find myself feeling very overwhelmed most of the time back here/worried that I'm not going to have time to finish all the reports" (Document No. 23-5 at 15). These emails suggest that Plaintiff's work will go or went unfinished, not that she worked late or took work home to finish. More compelling is the absence of

26

any reference to Plaintiff doing extra work beyond her shift to complete her tasks in her December 15, 2003 email to Ms. Overman wherein she outlines her complaints regarding the heavy workload (Document No. 23-4, Ex. C at1).

Even assuming Plaintiff took "work home due to the overload of reports" as she claims, Defendant has proffered evidence that its management did not believe Patient Access Representatives, due to the nature of the work, could perform any work from home. Donna Overman states in her Declaration that "Patient Access Representatives have no need to work from home" and that Plaintiff "could not perform her job duties from home"(Document 14-2, Ex.1 at ¶ 33). Ms. Arduini also states in her Declaration, "I am not aware that Michelle Barvinchak ever worked from home, or of any work she could do from home" (Document No. 14-4, Ex. 2, at ¶ 20).

Based upon Plaintiff's evidence regarding her communications with Donna Overman, as well as Ms. Overman's and Ms. Arduini's statements that they did not believe Patient Access Representatives could perform work from home, Defendant would have had no reason to suspect that Plaintiff was performing extra work at home. *See Forrester,* 646 F.2d at 414 (holding that summary judgment in favor the employer was appropriate where the plaintiff deliberately did not report his overtime hours because "[a]n employer must have an opportunity to comply with the provisions of the FLSA"); *Davis,* 792 F.2d at 1278 (plaintiff never complained to management that he had to work overtime). As such, Plaintiff's theory that Defendant had constructive knowledge that she was doing work beyond her shift based upon the overwhelming workload and complaints regarding the same, is simply not supported by the evidence of record. Defendant's motion for summary judgment as to Plaintiff's overtime claim based upon work from home is, therefore, granted. *See Forrester* and *Davis, supra.*

27

## c.     Plaintiff's receipt of work calls at home.

Finally, Plaintiff claims she is owed overtime pay for the time she spent responding to work related phone calls at home (Document No. 23-7, Ex. F at 3). According to Plaintiff, Donna Overman had specifically instructed employees to call Plaintiff at home if they had questions. *Id.* Defendant responds that this alleged overtime is not recoverable under the FLSA because Plaintiff has not offered any evidence that Defendant knew or should have known that such calls were anything other than *de minimis*.

The *de minimis* doctrine provides a limiting principle to compensation for trivial calculable quantities of work. *de Asencio v. Tyson Foods, Inc.,* No. 06-3502, 2007 WL 2505583, at *10 (3d Cir. September 6, 2007) (providing guidance on the *de minimis* doctrine). Work lasting only a few seconds or minutes beyond the scheduled working hours may be disregarded. *de Asencio,*2007 WL 2505583, at *11 (*citing Anderson*, 328 U.S. at 692). It is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved. *Id.*

The regulation appearing in 29 C.F.R. § 785.47 addresses *de minimis* time under the FLSA:

> In recording working time under the Act, insubstantial or insignificant periods of time beyond the scheduled working hours, which cannot as a practical administrative matter be precisely recorded for payroll purposes, may be disregarded. The courts have held that such trifles are *de minimis*. (*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946))[.] This rule applies only where there are uncertain and indefinite periods of time involved of a few seconds or minutes duration, and where the failure to count such time is due to considerations justified by industrial realities. An employer may not arbitrarily fail to count as hours worked any part, however small, of the employee's fixed or regular working time or practically ascertainable period of time he is regularly required to spend on duties assigned to him.

In determining whether otherwise compensable time is *de minimis*, the court should consider:

28

(1) the practical administrative difficulty of recording the additional time; (2) the aggregate amount of compensable time; and (3) the regularity of the additional work. *de Asencio,*2007 WL 2505583, at *11 (*citing Lindow v. United States*, 738 F.2d 1057, 1063 (9th Cir. 1984) (holding that time difficult to calculate, small in the aggregate, and irregularly performed is *de minimis*)).

By way of example, applying these factors in *Lindow,* the Ninth Circuit found the 7 to 8 pre-shift minutes spent by Army Corps of Engineers employees reading log books and exchanging information was *de minimis* because the work was not always performed before their shifts and because the Corps would have had difficulty recording the overtime. *Lindow*, 738 F.2d at 1063-64. The court also found that the 5 to 15 minutes the plaintiffs spent in arriving early to relieve departing operators during lockages which occurred during shift changes was also *de minimis.* The court reasoned that the aggregate amount of time involved was insignificant, there was considerable uncertainty as to how often lockages occurred during a shift change, and it would have been difficult as an administrative matter for the Corps to record the overtime due to the ad hoc nature of this duty. *Id.,* at 1064. Applying the three factors in *Reich v. New York City Transit Authority*, 45 F.3d 646, 652 (2d Cir. 1995), the Second Circuit held that time spent during the commute by transit police charged with the care of police dogs was *de minimis* because the need to restrain the dogs was not frequent or regular and did not last for a significant time. *New York City Transit Authority*, 45 F.3d at 652-53. In contrast, the radiological technologist's fifteen minutes of daily preparatory work in *Kosakow v. New Rochelle Radiology Assocs.*, 274 F.3d 706, 719 (2d Cir. 2001), was held not to be *de minimis* because it occurred regularly (everyday), would not have been difficult to calculate and in the aggregate constituted a significant amount of time.

Here, Plaintiff generally claims that employees "regularly and frequently" called her at home

29

with questions (Document 23-7, Ex. F at 3). She does not, however, offer evidence as to how often she received such calls or how long the calls lasted. In her Declaration submitted by Defendant, co-worker Candie McQuiston states that she did call Plaintiff "on a few occasions" outside of work regarding reports and scheduling issues and that these calls "lasted only a few minutes" (Document No. 14-5, Ex. 9 at ¶ 25). Applying the three factors set forth by the Ninth Circuit in *Lindow*, Plaintiff has proffered no evidence regarding the administrative difficulty (or lack thereof) of recording the additional time or the aggregate amount of compensable time. In fact, the only evidence of record regarding the length of time spent on the calls is Candie McQuiston's statement that her calls with Plaintiff lasted only "a few minutes." *See Lindow*, 738 F.2d at1062 ("[m]ost courts have found daily periods of approximately 10 minutes *de minimis* even though otherwise compensable) (citations omitted). As to the regularity of the calls, Plaintiff simply asserts that these calls were regular, but offers no evidence as to whether they occurred daily or even a few times per week. *See Id.,* at 1064 (noting that "[a] great deal of uncertainty surrounded the testimony as to how often lockages occurred at a shift change"). As such, this case is unlike *Kosakow* where the plaintiff offered specific evidence that she performed the additional work on a daily basis for fifteen minutes. *See Kosakow*, 274 F.3d at 719; *see also Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901 (9th Cir. 2004) (holding that where plaintiffs offered evidence that time spent changing into and out of uniforms required 20 to 30 minutes daily, their claims survived summary judgment); *Reich v. Monfort, Inc.*, 144 F.3d 1329, 1334 (10th cir. 1998) (finding that plaintiff's preliminary and postliminary work involving safety gear was not *de minimis* where plaintiffs offered evidence that such work took 10 minutes daily); *U.S. Dept. of Labor v. Cole Enterprises, Inc.,* 62 F.3d 775, 780 (6th Cir.1995) (holding that the plaintiffs' half-hour per day outside the scheduled shifts was not "de minimis"). As such, based upon the evidence of record regarding the calls, this Court would

be inclined to rule that this time is *de minimis*. *See Lindow*.

The issue here, however, is whether Defendant had actual or constructive knowledge that the time Plaintiff spent receiving these calls was more than *de minimis*. Even assuming that Plaintiff's time in this regard was compensable, Plaintiff cannot show that Defendant would have had actual or constructive knowledge that this time was more than *de minimis*. As with the extra time Plaintiff claims to have worked at home, Plaintiff does not assert that she informed Donna Overman or anyone else as to how much time she spent receiving these work related phone calls outside of her workday. While Plaintiff has offered numerous emails wherein she outlines her various work issues and complaints, none of them mention or reference the time she spent receiving work calls at home. For instance, in her May 12, 2003 email to Donna Overman, Plaintiff explains the length of time her various assigned tasks required and her concern that she will not be able to finish her work (Document No. 23-5, Ex. D at 15). Nowhere in the May 12, 2003 email does Plaintiff mention the time she spends responding to questions by phone after she has left work for the day. *Id*. Similarly, Plaintiff complains to Donna Overman about her workload in emails dated June 25, 2003 and December 6, 2004, but includes no reference or information regarding responding to work calls at home (Document No. 23-5, Ex. D at 4, 7). Consequently, even assuming Ms. Overman did instruct employees that they could call Plaintiff at home if they had questions, a fact which Ms. Overman disputes (Document No. 14-2, Ex. 1 at ¶ 36), there is simply no evidence that she would have had actual or constructive knowledge that the time Plaintiff dedicated to these calls was more than *de minimis*. The time Plaintiff spent responding to work related phone calls at home is, therefore, not compensable under the FLSA. *See Forrester*. Accordingly, Defendant's motion for summary judgment as to Plaintiff's overtime claim based upon work related phone calls at home is granted.

31

## 2. Plaintiff's FLSA Claims Based Upon Uniform Purchases

In her Amended Complaint, Plaintiff asserts two FLSA claims based upon Defendant's uniform policy: one claim is based upon weeks where plaintiff worked up to 40 hours and her purchase of uniforms reduced her compensation below minimum wage; the other is based upon weeks when Plaintiff worked in excess of 40 hours and her purchase of uniforms reduced her gross pay below the amount required to be paid for straight time and overtime compensation (Document No. 6 at ¶¶ 26, 27). Defendant contends that Plaintiff's first FLSA claim based upon her purchase of uniforms fails because its uniform policy never required Plaintiff to expend personal funds in any workweek in an amount sufficient to reduce her pay below the applicable minimum wage (Document No. 12 at 17). In support of this contention, Defendant has offered evidence that Plaintiff earned at least $222 more than minimum wage during her non-overtime work weeks and that she was never required to spend more than $222 in a single week for replacement scrubs (Document Nos. 12 at 18; 13 at ¶¶ 16, 35-36). Plaintiff completely failed to respond to this argument in her Response (Document No. 22). In her sur-reply, Plaintiff offers no evidence as to the amount she expended on uniforms and offers no evidence to support her claim that Defendant's uniform policy reduced her compensation below the minimum wage (Document No. 39). Rather, Plaintiff replies, "It is the employer's responsibility to keep records regarding the payment of wage and deduction therefrom. 29 C.F.R. § 516.2(a)(10). If Defendant's records prove to be inadequate and thus violate the Act, Plaintiff's estimate of her purchases will be made. Again, there are questions of fact on this issue and summary judgment is inappropriate." To the contrary, as Plaintiff has failed to come forward with any facts showing a genuine issue for trial, summary judgment is appropriate. *See* FED.R.CIV.P. 56(e) (if the adverse party does not respond with specific facts showing that there is a genuine issue for trial, summary judgment, if appropriate, shall be

entered against the adverse party).

With regard to Plaintiff's second FLSA claim based upon Defendant's uniform policy, Defendant argues that the FLSA allowed Defendant to require Plaintiff to spend up to $222 in a non-overtime *or* overtime week (Document No. 12 at 20). Again, Plaintiff has offered no evidence as to the amount she expended on uniforms and offers no evidence to support her claim that Defendant's uniform policy reduced her gross pay below the amount required to be paid for straight time and overtime compensation (Document Nos. 22, 39). Accordingly, Defendant's motion for summary judgment as to Plaintiff's FLSA claims based upon Defendant's uniform policy is granted. *See* FED.R.CIV.P. 56(e).

An appropriate Order follows.

33

**AND NOW**, this 28th day of September, 2007, after consideration of the Defendant's Motion

To Dismiss And For Summary Judgment (Document No. 11), in accordance with the foregoing

Memorandum Opinion, IT IS HEREBY ORDERED that Defendant's Motion is **GRANTED** in part and

**DENIED** in part as follows:

1.) Defendants' Motion to Dismiss is granted with respect to:

    a.)    Plaintiff's FLSA claim based upon Defendant's alleged record keeping violations; and

    b.)    Plaintiff's WPCL claims;

2.) Defendants' Motion to Dismiss is denied in all other respects;

3.) Defendants' Motion for Summary Judgment is granted with respect to:

    a.)    Plaintiff's FLSA and PMWA overtime claims based upon Plaintiff's work from home;

    b.)    Plaintiff's FLSA and PMWA overtime claims based upon Plaintiff's work related phone calls at home; and

    c.)    Plaintiff's FLSA claims based upon Defendant's uniform policy; and

4.) Defendants' Motion for Summary Judgment is denied in all other respects.

**BY THE COURT:**

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**

34