# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHELE BARVINCHAK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NO. 3:2006-69 |
| v. ) | |
| ) | |
| ) | |
| INDIANA REGIONAL MEDICAL ) | JUDGE GIBSON |
| CENTER, ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION and ORDER

**GIBSON, J.**

This matter comes before the Court on the Plaintiff's Motion for Reconsideration (Document No. 47). For the reasons stated herein, the Court will deny the motion.

This Court has previously recognized the standards governing motions for reconsideration:

> The United States Court of Appeals for the Third Circuit has held that "[t]he purpose of a motion of reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Cohen v. Austin*, 869 F.Supp. 320, 321 (E.D.Pa.1994) (citing *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir.1985), cert denied, 476 U.S. 1171, 106 S.Ct. 2895, 90 L.Ed.2d 982 (1986))(quoted in *Williams v. City of Pittsburgh*, 32 F.Supp.2d 236, 238 (W.D.Pa.1998)). Accordingly, a "district court will grant a party's motion for reconsideration in any of three situations: (1) the availability of new evidence not previously available, (2) an intervening change in controlling law, or (3) the need to correct a clear error of law or to prevent manifest injustice." *Williams*, 32 F.Supp.2d at 238; *Reich v. Compton*, 834 F.Supp. 753, 755 (E.D.Pa.1993)(citing *Dodge v. Susquehanna Univ.* 796 F.Supp. 829, 830 (M.D.Pa.1992)). Thus, "[d]issatisfaction with [a court's] ruling is not a proper basis for reconsideration." *Burger King Corp. v. New England Hood and Duct Cleaning Co., No. 98-3610*, 2000 WL 133756 at *2 (E.D.Pa. Feb.4, 2000).

> District courts grant motions for reconsideration sparingly as there is an interest in finality. *Williams*, 32 F.Supp.2d at 238.

*Velazquez v. UPMC Bedford Memorial Hosp.*, 338 F.Supp.2d 609, 610-611 (W.D.Pa. 2004).

The Plaintiff's motion addresses four of the Court's rulings set forth in this Court's Memorandum Opinion and Order of Court dated September 28, 2007 (Document No. 46).

The first challenge to the Court's previous opinion focuses on the dismissal of the Plaintiff's claim made pursuant to the Pennsylvania Wage Collection Act for hours worked by the Plaintiff and her proposed class beyond their scheduled hours for the week and for hours worked in excess of forty in a workweek. Plaintiff's Brief in Support (Document No. 48), pp. 1-4. The Court dismissed this claim in response to the Defendant's motion to dismiss because the Plaintiff failed to allege the existence of a contract through which the Plaintiff could enforce payment for hours worked. Memorandum Opinion, pp. 17-20. The Plaintiff presents no new evidence, a change in the law or a clear error of law or a need to prevent a manifest injustice as this Court specifically addressed the absence of an implied contract between the Plaintiff and Defendant within its reasoning. *Id.* The Plaintiff now seeks reconsideration based upon that very principle, that the parties had an implied contract for payment by the Defendant for hours worked by the Plaintiff, whether beyond the Plaintiff's scheduled hours for the workweek or for hours worked beyond forty in a workweek; the Plaintiff argues that "[t]he Court's holding is contrary to law." Plaintiff's Brief (Document No. 47), p. 2. The Plaintiff cites *McGough v. Broadwing Communications, Inc.*, 177 F.Supp.2d 289, 297 (D.N.J. 2001) in support of her argument. *Id.* At p. 3. The Court quotes again that portion of the *McGough* opinion cited in the Plaintiff's motion and the sentence following it:

2

> As one Pennsylvania court has explained, "a promise to pay the reasonable value of the service is implied where one performs for another, with the other's knowledge, a useful service of a character that is usually charged for, and the latter expresses no dissent or avails himself of the service." *Id.* at 430, 450 A.2d 984 (citing Home Protection Building & Loan Association, 143 Pa.Super. 96, 98, 17 A.2d 755 (1941) and 12 Amer.Jur.Contracts, § 5). However, a promise to pay for services can only be implied, however, in circumstances under which the party rendering the services would be justified in entertaining a reasonable expectation of being compensated by the party receiving the benefit of those services. *Id.*

*McGough v. Broadwing Communications, Inc.*, 177 F.Supp.2d 289, 297 (D.N.J. 2001). Something that was not explicitly recognized in the Court's Memorandum Opinion and the Plaintiff's motion is that the Plaintiff's Amended Complaint (Document No. 6) implicitly alleges that payment was made to the Plaintiff for hours worked beyond those scheduled *when permitted* by the Defendant:

> Furthermore, upon information and belief, Defendant did not make Ms. Barvinchak and similarly situated employees aware that they were supposed to accurately indicate their time worked on time records to reflect any hours in excess of their schedules, for which they had not previously given permission to record. Consequently, Defendant has deliberately failed to make, keep, and preserve true and accurate records of the daily and weekly hours, wages, and other conditions and practice of employment of Ms. Barvinchak and similarly situated employees.

Amended Complaint, ¶ 15. "Defendant only paid Plaintiff and the similarly situated employees subject to the same policies for all their hours worked including those less than forty and in excess of forty in a work week when the hours worked in addition to their scheduled hours were worked and recorded *with the permission* of the management of Defendant." Amended Complaint, ¶ 23 (emphasis added). These allegations clearly establish that any implied contract between the Plaintiff and Defendant for hours worked beyond the hours scheduled required permission from the Defendant prior to payment for such hours. Applying the reasoning of *McGough*, the Court cannot conclude that the allegations of the Amended Complaint demonstrate that the Plaintiff and the potential members of the

3

class "had a reasonable expectation of being compensated" absent permission from the Defendant. *McGough* at 297. The motion is denied as to this first argument.

Next, the Plaintiff seeks reconsideration of the Court's conclusion that summary judgment is appropriate for the Defendant on the Plaintiff's Fair Labor Standards Act and Pennsylvania Minimum Wage Act claim because the evidence presented in the record supposedly demonstrates that the Defendant should have known that the Plaintiff was working from home because of her remarks to her supervisor over Plaintiff's concern for her ability to complete tasks within her scheduled work hours. Plaintiff's Brief, pp. 5-7. The Plaintiff also argues that the statements of Ms. Overman and Ms. Arduini should not have been credited over the Plaintiffs remarks regarding her increased workload and the Plaintiff's comments reflected "the potential for Plaintiff to perform work outside her normal working hours." *Id.* at pp. 5-6. Plaintiff believes it should have been "obvious" to the Defendant that the Plaintiff was working at home because of her comments as to her increasing workload and "Ms. Overman's threat" that the "[Plaintiff] would be guilty of insubordination" if her tasks were not completed during her "normal working hours". *Id.* at p. 6. Finally, the Plaintiff refers the Court to Ms. Overman's "policy" prohibiting her employees from working overtime as evidence that "Plaintiff [was prevented] from reporting time worked outside her workday." *Id.*

The Plaintiff's arguments do not present any new evidence that the Court has not already evaluated. Moreover, the arguments present no clear error of law that the Court committed in its previous Opinion. The Plaintiff refers the Court to the case of *In re Food Lion Effective Scheduling Litigation*, 861 F.Supp. 1263 (E.D.N.C. 1994) arguing that "[t]he facts ...are substantially the same as in the within case...." Plaintiff's Brief, p. 7. The Plaintiff is incorrect. Although *Food Lion* presents

4

facts similar to the case *sub judice*, the evidence in *Food Lion* was much stronger and clearer in that people witnessed these employees in question working "off-the-clock" as reflected in the Court's findings of fact. *Food Lion* at 1268 (Quinn Nos. 5, 6), 1269 (McLawhon Nos. 6, 7), 1270 (Perry No. 4) and (Ramsey No. 4). Additionally, the court concluded that "[m]ere knowledge of alleged work off-the-clock is insufficient" and that after an employer knows of such work, it must end the practice with [a] policy prohibiting the practice alone [being] insufficient." *Food Lion* at 1271(citation omitted).

The Plaintiff in the case *sub judice* has not demonstrated on the record that the Defendant or its supervisors were aware that the Plaintiff was working "off-the-clock". The Plaintiff would have the Court make the inference that she was working at home because she complained to her supervisor that she could not get her work assignments completed during her scheduled hours. This is not a logical inference the Court can make. Even considering this fact in conjunction with the fact that the Plaintiff was not permitted to work "off-the-clock", there is nothing on the record indicating that work was being done at home "off-the-clock". The evidence presented also indicates that work from home by the Plaintiff was impossible due to the nature of her job. Memorandum Opinion, p. 27. This evidence stands in clear distinction from that in *Food Lion* where eyewitness testimony of "off-the clock" and admissions to such work demonstrated actual knowledge by Food Lion of this practice. The evidence in the case *sub judice* presents neither constructive or actual knowledge of work "off-the-clock" by the Plaintiff or similarly situated individuals. The Plaintiff's motion is denied as to this second argument.

The Plaintiff's third argument concerns the Court's conclusion that the Plaintiff's answering of work-related telephone calls at her residence was demonstrated in the record to be no more than a *de minimus* amount of time. Plaintiff's Brief, pp. 7-10. The Plaintiff again presents no new evidence, a

5

change in the law or a clear error of law or a need to prevent a manifest injustice and offers that in the absence of evidence of the length of time of each telephone call, but with limited descriptions of "a few minutes" without evidence of the frequency of said calls, the evidence could amount to more than *de minimus*. *Id.* at p. 10. However, the record remains unchanged since this Court's earlier opinion and despite the fact that this Court must draw all inferences in favor of the Plaintiff, the Plaintiff must come forth with evidence of its own to refute the arguments of the Defendant. She has not done so, and the Court denies the Plaintiff's motion on this third argument.

The Plaintiff's final argument encompasses two issues with respect to the need for the Plaintiff to purchase uniforms for her employment in which summary judgment was granted: uniforms purchased in workweeks where the number of work hours totals forty or less and uniforms purchased in workweeks where the number of hours worked is in excess of forty. The Plaintiff first alleges that any uniform expenditure resulting in the reduction of her pay below the minimum wage in workweeks including up to forty hours is a violation of 29 U.S.C. § 206(a). Amended Complaint ¶ 26. However, in workweeks where the hours worked exceed forty, the Plaintiff alleges that any expenditure on uniforms that results in a reduction of "gross pay" up to forty hours and overtime wages for all hours beyond forty is a violation of 29 U.S.C. § 207(a). Amended Complaint ¶ 27.

Although the Court has concluded that FLSA provides for a claim for the Plaintiff's hourly wages up to and including forty hours of work in an *overtime* workweek plus her overtime pay, Memorandum Opinion, pp. 7-14, such a conclusion does not translate into a separate claim of a violation of FLSA when uniform expenditures result in a lower rate of income for an overtime workweek. Uniform expenditures may lessen the rate of pay in a workweek and/or an overtime

6

workweek so long as it does not lessen the wages owed to an amount less than the *minimum wages* and overtime *premium wages* due for that workweek. *See* Department of Labor, Priv. Ltr. Rul. FLSA 2001-7 (February 16, 2001), *infra*. The Plaintiff's reading of FLSA is incorrect on this issue.[1] The Plaintiff misreads the Court's Memorandum Opinion. The Plaintiff's FLSA claim for her regular rate of pay in overtime weeks survived the Defendant's Motion to Dismiss, but her FLSA claim for uniform purchases in overtime workweeks and workweeks in which she worked up to forty hours both failed for her lack of evidence in the record as to the amount she expended on such uniforms. Memorandum Opinion, pp. 32-33. The Plaintiff fails again in this motion to present new evidence on this point, a change in the law or a clear error of law or a need to prevent a manifest injustice in the Court's previous decision on this matter. This motion is therefore denied for this reason alone. However, the Court did not address the legal argument addressed by both parties until now. Even if the Plaintiff answered the Defendant's motion for summary judgment with sufficient evidence, her understanding of her FLSA claim for alleged uniform purchases is incorrect.

To be a viable claim under FLSA, the Plaintiff and similarly situated persons must demonstrate that their uniform purchases caused their wages to drop below the minimum wage for the weeks they worked up to forty hours or be reduced below the minimum wage and the overtime premium wages due for those weeks in which they worked forty hours plus the overtime. Still, in the absence of any specific evidence of uniform purchases by the Plaintiff she offers in response to the Defendant's argument that

---

[1] The Plaintiff's brief reads in pertinent part: The question is whether Plaintiff and other similarly situated employees expended sufficient personal funds in purchasing uniforms to reduce their earnings in the week in which they did so to less than minimum wage for every hour worked, if they worked fewer than forty hours in the week, or by <u>any amount</u> if they worked in excess of forty hours in the workweek in which such expenditures were made.

7

the Plaintiff had to spend more than $222 in a week to create a FLSA violation that she could have spent $50 a day for a five day workweek creating a violation. Plaintiff's Brief, p. 11.[2] This is nothing more than rank speculation as to uniform cost.

The Plaintiff's reading of the Department of Labor's Private Letter Ruling FLSA 2001-7 (February 16, 2001)(Document No. 14-5, pp. 28-30) is incorrect as the Defendant is correct in concluding from this letter that "an employer may not lawfully require an employee to pay for an expense of the employer's business if doing so reduces the employee's pay below any statutorily-required minimum wage or overtime premium pay." *Id.* at p. 28. The Plaintiff's argument with respect to weeks including overtime pay is that *any* purchase of a uniform would result in a loss of overtime pay in violation of FLSA. Plaintiff's Brief, pp. 12-13. Such a reading of the Department of Labor's regulations would otherwise require employers to reimburse employees for uniform expenses that do not result in loss of one's minimum wage and overtime pay. Under such a reading of the regulation, an employee could purchase a uniform in an overtime week and claim a FLSA violation every time they did so because they could claim it reduces their overtime renumeration or their *regular* wage rate. The Department of Labor's Private Letter Ruling FLSA 2001-7 explicitly reads: "Under these principles, an employer may not lawfully require an employee to pay for an expense of the employer's business if doing so reduces the employee's pay below any statutorily-required minimum wage or overtime premium pay." To explain the Court's reasoning, an example is appropriate. If minimum wage is

---

[2]The Defendant clarifies that this rate of $222 was in fact the amount of the Plaintiff's weekly wages above the minimum wage three years prior to the filing of this civil action. Defendant's Brief, p. 11, n. 4. This action commenced on March 22, 2006. The Defendant's calculation is consistent with the Court's finding of fact in its Memorandum Opinion, p. 5, that the Plaintiff was paid $10.70 an hour in March 2003 and with the minimum wage at that time being $5.15 an hour, the $5.55 an hour difference multiplied by forty equals $222.

8

assumed to be $5 an hour and if one works 8 hours a day for five days a week, that person would earn $200 for the workweek. Now, if one assumes that a person needing to buy a uniform pays for a uniform in that workweek, a violation of FLSA certainly exists even if the uniform was $1 because the wage of the worker dips below the minimum wage after that $1 expense. Under different circumstances, let us assume that an employee in the same job, but with more seniority is making $10 an hour, $80 in a day, $400 a week and must buy a uniform. This senior employee could spend up to $200 in uniforms before his wage becomes lower than the minimum wage. Taking the hypothetical a step further, let us also assume the senior employee works five hours of overtime in that week. The overtime pay due to him is time and a half, that is $15 per hour of overtime resulting in an overtime pay totaling $75. The senior employee's regular pay and overtime pay for that week would be a total of $475. According to the Plaintiff if the senior employee pays for any uniform in an overtime week, it results in a violation of FLSA. This is incorrect. The senior employee could still spend $200 in uniform costs resulting in a balance of $275, which is equal to the total amount of the *minimum* wage and *overtime* wages due to the senior employee. Further support and explanation is presented here:

> The general rule with regard to the cost of uniforms and their maintenance is if an employer requires its employees to wear uniforms, then the cost of the uniforms cannot be imposed upon the employees if it would reduce the employee's wage below the minimum standard. Note that this same rule applies when uniforms are required by law or by the nature of the work. Also, there may be a tacit understanding among employees that uniforms are required, such as with nurses' aides in nursing homes. Likewise, an employer that requires its employees to wear uniforms may not furnish the uniforms to the employees and then deduct the cost of the uniforms from the wages of the employees if the deduction reduces the wages below minimum wage.

9

Example:

If the applicable minimum wage is $5.15 an hour and an employee is paid $5.50 an hour and works 45 hours in the workweek, $14 is the maximum amount the employer can legally deduct and still satisfy the minimum wage provisions.

($5.50 - $5.15) x 40 = amount in excess of minimum wages
$.35 x 40 = $14

If the employee only works 30 hours that week, $10.50 is the maximum amount that can be legally deducted from the employee's wages.

($5.50 - $5.15) x 30 = amounts in excess of minimum wages
$.35 x 30 = $10.50

1 *Wage and Hour Law: Compliance and Practice* § 8:22 (2008)(footnotes omitted). Another treatise concurs:

[b] Uniforms and Uniform Allowances.

If the wearing of uniforms is required by law, by the employer or by the nature of the work performed, the cost of furnishing or maintaining such uniforms may not be deducted from wages if the deduction would reduce the employee's net pay below the minimum wage. Moreover, when an employee is required to purchase a uniform, the employee must be reimbursed for the cost of the uniform to the extent that the expense cuts into the statutory minimum wage or the overtime compensation mandated. Such reimbursement must be made promptly on the regular payday for the workweek in which the purchase is made and may not be avoided by requiring an employee to purchase the uniform prior to the first day of work.

1 Laurie E. Leader, Esq., *Wages & Hours: Law and Practice* § 4.03 (2007)(footnotes omitted).

The Plaintiff makes further argument regarding the unrecorded hours of straight time and overtime by the Plaintiff and others similarly situated in that any uniform expense incurred by them in such weeks of unrecorded time automatically results in a FLSA violation because there was no payment for this unrecorded time, but there were expenses incurred for uniforms. Plaintiff's Brief, pp. 13-14.

10

The Court finds that the Plaintiff must first prove the violation of FLSA for the unrecorded time before any proper calculation of the uniform expense claims can be determined.

An appropriate Order follows.

**AND NOW**, this 23rd day of April, 2008, in consideration of the Plaintiff's Motion for Reconsideration (Document No. 47), IT IS HEREBY ORDERED THAT the Plaintiff's Motion is DENIED.

**BY THE COURT:**

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**